**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 18-MJ-0123(DAR)** |
| | : | |
| **AZHER HABIB SALIKUDDIN** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits that a sentence of a fine at the top end of the United States Sentencing Guidelines (USSG") range as determined by the Court, followed by a one year period of probation, would adequately serve the interests of justice as codified in 18 U.S.C. § 3553(a). The Government submits this Memorandum in support of this position, and to assist the Court in fashioning an appropriate sentence.

**FACTUAL AND PROCEDURAL BACKGROUND**

The defendant was employed by the United States government National Geospatial-Intelligence Agency ("NGA") from about February 2009 until about September 2016.   To conduct his official duties at NGA, the defendant was required to hold a U.S. Government TOP SECRET ("TS") // SENSITIVE COMPARTMENTED INFORMATION ("SCI") clearance.   He received the aforementioned clearance on or about February 2, 2009.

The defendant was detailed to the FBI Weapons of Mass Destruction Directorate from on or about May 6, 2013 to on or about July 11, 2014.   As an FBI Detailee, the FBI accepted the defendant's NGA TS//SCI clearance.   At the beginning and again at the end of his detail with the

1

FBI, the defendant signed several FBI security documents indicating his awareness of his responsibilities in handling FBI information and other security protocols.

While detailed to the FBI, the defendant had access to FBI computer networks including "Sentinel," the FBI's electronic case file system.   On or about May 7, 2014 the defendant conducted an FBI record check in Sentinel to determine if a relative, hereinafter called "Individual A," was being investigated by the FBI.   This check returned multiple FBI documents from a then-ongoing classified FBI investigation, which revealed that Individual A was the subject of that investigation and was under surveillance by law enforcement.   In total, the defendant reviewed three documents from the FBI investigative file relating to Individual A.   The defendant was concerned that his own security clearance would be jeopardized by Individual A's activities.

The defendant understood that the existence of the investigation was a fact that was a thing of value to the FBI.   Between on or about May 7, 2014 and on or about December 18, 2014, the defendant converted this fact to his own use by passing that fact on to a family member, with the intent that family members counsel Individual A to cease certain activities of concern. The defendant had no work-related purpose for conducting the search or for reviewing the documents that resulted from the search, or for passing information regarding the existence of the investigation to a family member; he did so for his own benefit and the benefit of his family. Further, the defendant understood that the acts of performing the Sentinel search outlined here, reviewing the resulting documents, and passing on information obtained thereby violated agreements that the defendant signed, as well as regulations in place, and federal law.

The defendant performed searches in Sentinel of names for personal reasons on two other occasions.   On or about March 31, 2014, the defendant conducted a record check in the FBI

Sentinel database using a specific name, referred to here as "Individual B." The results of the defendant's FBI Sentinel record check returned a document detailing the FBI's interview of Individual B. Computerized records of searches of FBI case files reveal that, on or about May 30, 2014, the defendant conducted a third search in the FBI Sentinel database for another name, which the defendant admitted was also for personal reasons.

Investigators from the FBI confronted the defendant with the evidence against him during the course of their investigation. The defendant acknowledged that he had conducted the searches listed above, and that he has passed on information obtained from the first search to a family member for the reasons set forth above. He acknowledged that the three searches were conducted solely for personal reasons and were in no way related to his work, and that he therefore knew the searches violated FBI protocols. After being advised of the government's intent to charge him in relation to the conduct alleged above, the defendant, through counsel, arranged to turn himself in to law enforcement for booking on an agreed-upon date. On October 10, 2018, the defendant turned himself in to law enforcement, and was later presented on the charge of knowing conversion of a thing of value to the United States with value not exceeding $1,000, pursuant to 18 U.S.C. § 641, and pleaded guilty to that charge before this Court that same day. The Court ordered a pre-sentence report and set the case for sentencing on January 3, 2019 at 3 pm.

## SENTENCING CALCULATION

### A.  STATUTORY MAXIMUMS

A violation of knowing conversion of a thing of value to the United States with value not exceeding $1,000, pursuant to 18 U.S.C. § 641, carries a maximum sentence of a fine of up to

$100,000, imprisonment for not more than one year, or both. The defendant is eligible for up to five years of probation because the offense is a Class A Misdemeanor. 18 USC § 3561(c)(2).

### B.  SENTENCING GUIDELINE CALCULATION

The plea agreement sets forth the parties' agreement that, pursuant to U.S.S.G. § 2B1.1, the Base offense level for the charged crime is level 6 and two levels are subtracted as a result of the defendant's acceptance of responsibility, resulting in an estimated Sentencing Guidelines offense level of 4.   Records checks and the pre-sentence report indicate the defendant has no criminal history. The estimated sentencing guidelines range was therefore estimated to be 0 to 6 months of incarceration.   Since the applicable guideline range is in Zone A of the Sentencing Table, a sentence of imprisonment is not required unless the applicable guideline in Chapter Two expressly requires such a term. USSG §5C1.1(b).   The applicable guidelines also call for a fine of between $250 and $5,000, and U.S.S.G. § 5E1.2 permits the Court to impose a fine that is sufficient to pay the federal government the costs of any imprisonment, term of supervised release, and period of probation. If the Court imposes probation, the sentencing guidelines call for a term of no more than three years since the offense level is five or less. USSG §5B1.2(a)(2).

### SENTENCING RECOMMENDATION

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."   United States v. Gall, 552 U.S. 38, 49 (2007).   The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark."   Id. at 46-49.   The district court should next consider all of the applicable factors

4

set forth in 18 U.S.C. § 3553(a).   Id. at 49-50.   Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a).   United States v. Rita, 551 U.S. 338, 347-50 (2007).

The § 3553(a) factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities.

Here, the United States requests that the defendant be sentenced to a fine equal to the top end of the applicable U.S. Sentencing Guidelines as found by the Court, which the government estimates to be $5,000, in addition to one year of probation with a requirement of 150 hours of community service. The Government makes this recommendation after considering the sentencing factors enumerated in 18 U.S.C. § 3553(a), the Sentencing Guidelines and policies promulgated by the United States Sentencing Commission, the nature and circumstances of the defendant's criminal actions in this case, his lack of prior crimes, and his pretrial acceptance of responsibility.

## A.   THE DEFENDANT'S CONDUCT IN THIS CASE MILITATES IN FAVOR OF THE MAXIMUM ALLOWABLE GUIDELINES-COMPLIANT FINE.

"The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay." USSG §5E1.2(a). In determining the appropriate fine, the court should consider, *inter alia*, "the need for the combined sentence to

reflect the seriousness of the offense, . . .to promote respect for the law, to provide just punishment and adequate deterrence . . . as well as any evidence of the defendant's ability to pay the fine." USSG §5E1.2(d).   Further, "the amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive." Id.

The defendant's knowing conversion of valuable FBI information, after his acceptance of a position of trust within the FBI which provided him access to sensitive information, was a serious breach of the defendant's professional duty, and his duty as a government employee.   Moreover, the defendant's willingness to use the FBI system for personal reasons on three different occasions erodes the public's faith in the integrity of the FBI and other law enforcement agencies.   These factors make clear the seriousness of the defendant's conduct, and the need for the punishment to reflect this.   Finally, as is made clear in the pre-sentence report, the defendant has the present ability to pay a fine. See PSR at pp. 12-15.

## B. PROBATION FOR ONE YEAR WITH SIGNIFICANT CONDITIONS IS APPROPRIATE IN THIS CASE.

The U.S. Sentencing Guidelines allow for a period of up to three years of probation for cases where, as here, the estimated Sentencing Guidelines offense level is Level 5 or below.   The instant case is the defendant's first criminal conviction.   The defendant's willingness to admit his misconduct at his first meeting with law enforcement and to turn himself in and plead guilty at his first appearance in Court suggest that recidivism is unlikely.   In addition, as part of his plea, the defendant signed an agreement not to pursue a security clearance or a position which requires one; that agreement should effectively prevent the defendant from obtaining any security clearance from a U.S. government agency in the future.

However, a period of probation may serve not only as a deterrent, but also as punishment. Here, a period of probation will allow the Court to mandate the completion of community service hours to serve as recompense for his actions. A sentence that includes 150 hours of community service may effectively punish the defendant and serve as a deterrent to others.

## CONCLUSION

The Government recommends that the Court sentence the defendant to a fine equivalent to the top end of the applicable Sentencing Guidelines range as found by the Court, as well as a period of probation to include a requirement of 150 hours of community service. Such a sentence appropriately punishes the defendant, provides important deterrence to others, and allows the defendant to pay his debt to society through Court-ordered service to others.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar # 472845

BY: _____
                -s-
THOMAS A. GILLICE
Assistant United States Attorney
D.C. Bar # 452336
555 4th Street, NW
Washington, DC 20530
202-252-1791

and

7

_____*-s-*_____
Matthew Walczewski
Il. Bar # 6297873
Trial Attorney
Counterintelligence
  and Export Control Section
National Security Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
 202-233-0986
matthew.walczewski@usdoj.gov